UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAPLE LYONS and JERRY LYONS,

   Plaintiffs,

  v.

FIRST AMERICAN TITLE INS. CO., et al.,

   Defendants.
_____/

No. C 09-4156 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion to dismiss the complaint for failure to state a claim came on for hearing before the court on November 18, 2009. Plaintiffs, Maple Lyons and Jerry Lyons ("plaintiffs"), appeared through their counsel, Mark Johnson. Defendant, First American Title Insurance Company ("First American" or "defendant"), appeared through its counsel, Joel Siegel and Karen Marchiano. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendant's motion, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This is a class action alleging discrimination in housing practices. Plaintiffs bring the action against First American on behalf of themselves, and all others similarly situated, alleging that defendant discriminates against minority homeowners on the basis of gender, race, color, and/or national origin, in its provision of residential title insurance policies. See generally Notice of Removal, Ex. D (Second Amended Complaint)("SAC").

Plaintiffs specifically take issue with First American's provision of title insurance to refinancing homeowners. Plaintiffs allege that, pursuant to the mandatory rate schedule ("Rate Manual") that defendant has on file with the California State Insurance Commissioner, defendant has certain discounts that it applies in the provision of title

insurance. See, e.g., SAC, ¶ 16. There is, for example, a Basic Insurance Rate that is charged to homeowners purchasing their properties for the first time. See id. at ¶ 17. However, homeowners who purchase title insurance to cover their lenders in connection with a home refinance are entitled to significant discounts on the Basic Insurance Rate. Id. This refinancing discount is known as the Refinance Rate.

According to plaintiffs, First American has overcharged refinancing homeowners by selectively applying differing Refinance Rates. See SAC, ¶ 19. There are two Refinance Rates that defendant uses: (1) a Refinance Rate set forth in Section C-13(a) of the Rate Manual, which allows for more than a 50% reduction from the Basic Insurance Rate; and (2) a Refinance Rate set forth in Section C-13(b) of the Rate Manual, which allows for a 30% discount off the Basic Insurance Rate. See id. at ¶ 21. As a matter of practice and policy, plaintiffs allege that defendant denies the first – and more generous – of these Refinance Rates to refinancing homeowners in cases where defendant or its agents considers the homeowner's underlying financing to be "non-prime" or "sub-prime." Id. at ¶ 22.

Plaintiffs allege that a wealth of market data that is well known throughout the mortgage and title insurance industries and to defendant in particular, demonstrates a strong correlation between non-prime financing, and race and ethnicity. This data indicates that minorities receive non-prime mortgage financing far more often than do non-minority Caucasians. Id. at ¶ 23. Thus, allege plaintiffs, by routinely and systematically charging "non-prime" refinancing homeowners more for lender's title insurance than other homeowners (i.e., by applying the second of the foregoing Refinance Rates), defendant has caused its minority title insurance purchasers to pay disparately excessive title insurance premiums. See SAC, ¶ 26.

On July 22, 2008, plaintiffs – African-American homeowners who refinanced their property on August 23, 2005 – filed their original action in Superior Court in Contra Costa County, alleging causes of action under California's Fair Employment and Housing Act

("FEHA") and California Business & Professions Code § 17200.  See Notice of Removal, Ex. A.  On August 28, 2009, plaintiffs filed their second amended complaint in the state court action, adding for the first time a cause of action under the federal Fair Housing Act ("FHA").  On September 8, 2009, First American removed the action to this court.  See generally Notice of Removal.

The operative second amended complaint, as it is currently pleads, thus states three causes of action:  (1) violations of the FHA, 42 U.S.C. § 3601 et seq.; (2) violations of FEHA, Cal. Gov't Code § 12900 et seq.; and (3) unlawful business practices pursuant to California Business and Professions Code § 17200 et seq ("UCL").  See generally SAC.

Defendant now moves to dismiss the second amended complaint, on various alternative grounds.

**DISCUSSION**

A.   Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be dismissed only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory.  Id.  The issue is not whether a plaintiff is likely to succeed on the merits but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or her claims.  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level."  See Bell Atlantic Corp.

3

1  v. Twombly, 550 U.S. 544, 553-56 (2007).   While the complaint "does not need detailed
2  factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his
3  'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic
4  recitation of the elements of a cause of action will not do."  Id.  A plaintiff must allege
5  "enough facts to state a claim to relief that is plausible on its face," not just conceivable.
6  Twombly, 550 U.S. at 570.; see also Ashcroft v. Iqbal, __U.S. __, 129 S. Ct. 1937, 1950
7  (2009).

8  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
9  court to draw the reasonable inference that the defendant is liable for the misconduct
10 alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "The plausibility
11 standard is not akin to a probability requirement, but it asks for more than a sheer
12 possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that
13 are merely consistent with a defendant's liability, it stops short of the line between
14 possibility and plausibility of 'entitlement to relief."  Id.

15 B.      Defendant's Motion to Dismiss

16         Resolution of First American's motion requires resolution of three separate sub-
17 issues raised by the parties: (1) whether plaintiffs' FHA and FEHA claims are time-barred;
18 (2) whether plaintiffs' claims are barred by California Insurance Code section 12414.26;
19 and (3) whether plaintiffs' substantive claims under the FHA, FEHA, and UCL state legally
20 cognizable claims for relief.

21         As a preliminary matter, the court notes that defendant has raised plaintiffs' failure to
22 exhaust administrative remedies as an additional ground for dismissal.  The court,
23 however, rejects this argument at the outset.  As the parties acknowledge, plaintiffs were
24 ordered by the state court in January of 2009 to exhaust their administrative remedies, as
25 set forth in Insurance code § 12414.13.  This provision allows any person "aggrieved by
26 any rate charged" by a title insurer to request that the title insurer review "the manner in
27 which the rate, plan, system, or rule has been applied with respect to insurance or services

28

4

afforded him" and, in the event relief is not granted by the title insurer, to file "a written complaint and request for hearing with the commissioner, specifying the grounds relied upon...".  Cal. Ins. Code § 12414.13.  However, the provision sets forth no specific procedure and/or form for compliance with it.  Here, it is undisputed that: (a) plaintiffs sent a letter to the Insurance Commissioner on February 17, 2009, setting forth the details of the dispute, attaching the state court complaint, stating plaintiffs' belief that the commissioner's jurisdiction would be unavailing, and requesting that the commissioner decline jurisdiction; (b) that defendant responded to plaintiffs' letter by sending their own letter to the commissioner on March 5, 2009, making the same arguments regarding exhaustion that defendant raises by way of the instant motion; and (c) that the commissioner responded to both parties' letters by stating that the allegations raised in plaintiffs' complaint "do not call upon the specialized expertise of the agency," and that the commissioner would "respectfully decline" to exercise jurisdiction over the complaint.  See Def. Request for Judicial Notice, Ex. A; Pl. Request for Judicial Notice, Exs. E, F.

The court finds that plaintiffs' actions in writing to the commissioner, and defendant's seized opportunity to respond, and the commissioner's letter declining jurisdiction subsequent to both parties' submissions, satisfy the general requirements of section 12414.13.  Defendant's argument to the contrary improperly elevates form over substance, and invites the court to unnecessarily delay the proceedings.  Thus, defendant's motion to dismiss on this additional ground is denied.

The court now turns to the three remaining arguments raised by defendant in support of dismissal.

    1.    <u>Whether FHA and FEHA Claims are Time-barred</u>

Neither party disputes that plaintiffs' FHA and FEHA claims are subject to a two-year limitations period or that, based on the allegations of plaintiffs' complaint, the FHA and FEHA claims fall outside the limitations period, since they were filed almost three years after the August 23, 2005 date of plaintiffs' refinance.  Rather, the parties dispute plaintiffs'

ability to demonstrate that either equitable tolling or the continuing violation doctrine save the claims. Plaintiffs' complaint specifically alleges that both doctrines are applicable. See SAC, ¶¶ 51-58.

Defendant asserts first that equitable tolling cannot apply because all relevant facts were reasonably discoverable as of August 23, 2005. Specifically, defendant argues that: the Refinance Rates at issue were publicly filed with the CDI; that the rates charged to plaintiffs were fully disclosed at the August 23, 2005 closing; that the prime/non-prime distinction in the Refinance Rates is readily apparent on the face of the public rate filings; and that even plaintiffs' original complaint filed in 2008 cited to studies and articles published in 2005 and 2006 that disclosed the existence of impact-based discrimination in mortgage lending. See, e.g., SAC, ¶¶ 16, 37, 39, 41; Def. Request for Judicial Notice, Ex. B at 20; Notice of Removal, Ex. A at ¶¶ 24-27. All of which, according to defendant, means that plaintiffs should have known of the existence of their claim, and simply failed to exercise the due diligence required to timely assert their claim.

Defendant raises valid points. It is true enough, for example, that the public filing of defendant's Refinance Rates, and their disclosure on their face of the differences between the two Refinance Rates offered to prime and non-prime homeowners, suggests that plaintiffs maybe should have known of their claim in the exercise of due diligence. Similarly, it is suggestive of the same thing, that plaintiffs' original complaint acknowledges the existence of studies and articles that disclosed the existence of impact-based discrimination in mortgage lending. However, notwithstanding the undisputed and/or true nature of these facts, there remains a connection that these independent facts fail to make: i.e., the connection between the title insurance rates disclosed by defendant, and the specific knowledge of the disparate impact of *title insurance rates* on subprime homeowners by race. While the existent facts may have been sufficient to allow plaintiffs to make the foregoing connection on their own, the court declines to find that, as a matter of law, plaintiffs should have made the connection as of August 2005. For, as plaintiffs

6

correctly note, "what [a plaintiff] knew and when [he] knew it are questions of fact," and in a close matter, where the trier of fact could reasonably find one way or another as to the question, this is a matter that is to be resolved by the trier of fact. See Simmons v. United States, 805 F.2d 1363, 1368 (9th Cir.1986); Bibeau v. Pacific Northwest Research Foundation Inc., 188 F.3d 1105 (9th Cir. 1999). So here. Normally, therefore, plaintiffs would be entitled to commence discovery regarding plaintiffs' knowledge of the facts giving rise to their causes of action under the FHA and FEHA.

With respect to the continuing violations theory alleged by plaintiffs, defendant actually has the better argument. Plaintiffs base their continuing violations argument on the fact that they are continuing to pay mortgage premiums which qualify as a single continuing violation. However, while the continuing violations doctrine is well established in the employment context, and even in the FHA context, see Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), it has only been applied in situations where there is an ongoing violation that has been pled or proven. In Havens, for example, the petitioners were alleging a continuing pattern, practice, and policy of unlawful racial steering that deprived them of the benefits of interracial association arising from living in an integrated neighborhood, and petitioners furthermore alleged at least five separate incidents. Here, by contrast, plaintiffs have only alleged a single refinancing loan in August 2005, and no other incidents of improperly applied Refinance Rates that could qualify as a continuing violation at some point within the statute of limitations period. The fact that plaintiffs continue to pay premiums, based on the single refinancing act, constitutes only a continuing effect, as defendant notes. More importantly, however, plaintiffs have failed to set forth any case law or precedent that would support construing the allegations here as a continuing 'violation,' rather than a continuing 'effect.'

In sum, the court rejects plaintiff's theory that the continuing violation doctrine precludes application of statute of limitations, and would normally further find that, because triable issues of fact remain regarding equitable tolling, a dismissal of plaintiffs' claims as

time-barred is not warranted at this time. However, in view of the court's rulings herein with respect to the remaining legal arguments raised by defendant – as discussed in detail below – the complaint must ultimately be dismissed in its entirety.

### 2. California Insurance Code section 12414.26

Defendant first contends that plaintiffs' action is barred by California Insurance Code § 12414.26, which provides: "No act done, action taken, or agreement made pursuant to the authority conferred by Article 5.5 [Rate Filing and Regulation] ... shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this state ... which does not specifically refer to insurance." Defendant argues that plaintiffs' complaint is essentially an improper challenge to defendant's rate-setting activities, since plaintiff's allegations target, at root, the very existence of defendant's Refinance Rates – both of which were publicly filed and disclosed pursuant to Article 5.5 of the Insurance Code. In response, plaintiffs assert that defendant's argument is premised on a 'filed rate' doctrine that has largely been discredited, and that plaintiffs do not at any rate take issue with the actual content or setting of defendant's rates, merely defendant's application thereof.

Defendant primarily relies upon Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 33 (1998), and Walker v. Allstate Indem. Co., 77 Cal. App. 4th 750, 758 (2000) for support of its argument. In Quelimane, the California Supreme Court considered whether Insurance Code § 12414.26, along with Insurance Code § 12414.29, provide the exclusive remedies for plaintiffs who allege unlawful conspiratorial conduct that is unrelated to rate-setting activities against defendant title insurers. The court ultimately answered this question in the negative, and found that § 12414.26 does not immunize title insurers from civil liability for certain state law claims, including UCL claims specifically. However, in a side-note relied on by defendant here, the court explicitly acknowledged that the foregoing provisions do, at a minimum, displace claims "as to title insurance company activities related to rate setting." Quelimane, 19 Cal. 4th at 33. The supreme court did not

8

specifically address the circumstances in which § 12414.26 may displace claims in the rate setting context.

Two years after Quelimane was decided, the state appellate court decided Walker v. Allstate Indem. Co. There, the court considered a suit brought by a putative class of automobile insurance customers against numerous automobile insurers, in which plaintiffs asserted various state law claims (including a UCL claim) premised "on the insurers' charging approved rates alleged [] to be 'excessive.'" See 77 Cal. App. 4th 750. The court held that Insurance Code §§ 1860.1 and 1860.2 – two provisions that form a part of the state's "comprehensive scheme for the regulation of rates and rating practices" – barred plaintiffs' action, reasoning that the provisions vest exclusive original jurisdiction over issues related to rate-making in the Insurance Commissioner.[1] Id. Pursuant to the "statutory scheme" enacted by voters in the form of the Insurance Code provisions at issue, continued the court, "the charging of an approved rate cannot be deemed 'illegal' or 'unfair' for purposes of the [UCL]." Id. at 756. The Walker court duly noted the Quelimane court's decision "up[holding] the viability of [UCL] claims against insurers...," but simultaneously noted the court's continued recognition of "the existence of statutory exceptions for ratemaking decisions." See 77 Cal. App. 4th at 759.

Neither Quelimane nor Walker presents a factual scenario that is directly analogous to the facts at bar. Quelimane dealt with allegations of unlawful conspiratorial conduct among title insurers, the alleged effect of which was to deny title insurance on real properties acquired at tax sales. Walker, for its part, concerned a direct challenge to the actual rates set by automobile insurers. While these differences are undoubtedly relevant to the differing results reached by the courts in each case, however, the differences themselves yield to the overarching principle adhered to in both, and correctly urged on the court by defendant: i.e., to the extent civil state law claims are premised on allegations

---

[1] As defendant points out, section 1860.1 of the Insurance Code, as construed by the court in Walker, contains nearly identical language as that contained in § 12414.26 of the Insurance Code (which governs title insurance specifically).

9

1 related to a defendant's actual rate-setting activities, then certain provisions of the
2 Insurance Code, including section 12414.26, operate to bar those claims.

3   The question to be answered here is thus whether plaintiffs' claims and allegations
4 do, in fact, challenge defendant's rate-setting activity, or instead challenge conduct that is
5 unrelated to any rate-setting activities. Plaintiffs assert that their claims fall outside the
6 scope of a traditional rate-setting challenge, because plaintiffs' allegations say nothing
7 about the content or amount of defendant's rates. Rather, plaintiffs' argue that their claims
8 allege that defendant's business practices, and the ways in which they are applied, are
9 racially discriminatory – the determination of which is a common function performed by the
10 courts.

11   On balance, the court concludes that plaintiffs' claims are, in fact, primarily premised
12 on defendant's activities related to rate-setting. Although plaintiffs characterize their
13 allegations as challenging defendant's practices in *applying* otherwise neutral, publicly filed
14 rates, plaintiffs' allegations make clear that they are taking issue with the very *existence* of
15 (1) the Refinance Rate disclosed under section C-13(a), and (2) the Refinance Rate
16 disclosed under section C-13(b). Plaintiffs allege, for example, that "[i]n accordance with
17 the Rate Manual and as a matter of explicit company policy, [d]efendant denies the more
18 generous of its Refinance Rate discounts [] to refinancing homeowners in cases where
19 [d]efendant ... considers the homeowner's underlying financing to be 'non-prime,'" all the
20 while simultaneously alleging that the "Rate Manual states that the Refinance Rate
21 discount 'does not apply to nonprime loans." See, e.g., SAC, ¶ 22; see also Cal. Ins. Code
22 §§ 12401 et seq. (setting forth statutory rate-setting requirements). Thus, it is the fact that
23 the two Refinance Rates in question – filed and disclosed under Article 5.5 as a result of
24 statutorily mandated rate-setting activities – exist and set forth two different rates, that is
25 the source of plaintiffs' grievance. The fact that plaintiffs' grievance is stated under the
26 guise of a discrimination claim, does not change this analysis.

27   Nor does plaintiffs' opposition alter the above conclusion. Plaintiffs have not, for
28

10

example, cited to any compelling – let alone controlling – legal authority in support of their argument that discrimination claims premised on an insurer's rates are deemed to fall outside the rate-setting context as a matter of law.  Furthermore, to the extent plaintiffs argue that defendant is relying on a 'filed rate' doctrine that has been discredited, this argument falls short of the mark.  The 'filed rate' doctrine – which generally stands for the principle that the approval of an agency effectively establishes the lawfulness of challenged rates – is traditionally employed as a bar to actions in the antitrust context, not the discrimination context.  See Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 416 (1986); Keogh v. Chicago & Northwestern Ry. Co., 260 U.S. 156 (1922).  Plaintiffs, moreover, cite to no Ninth Circuit authority upholding use of the filed rate doctrine in fields other than antitrust.  See, e.g., Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 992-93 (9th Cir. 2000)(discussing filed rate doctrine in antitrust context).  Thus, any attempt by plaintiffs to analogize defendant's arguments here to the filed rate doctrine more readily applicable in antitrust actions, is ultimately unpersuasive.

In sum, dismissal of plaintiffs' state law claims against defendant, as stated in plaintiffs' second and third counts, is warranted by Insurance Code § 12414.26.  The court finds no authority at this juncture, however, for dismissing plaintiffs' first count alleging violation of the Fair Housing Act.  Defendant has ignored that portion of section 12414.26 that expressly restricts protection from civil actions based on rate setting activities, to those actions or proceedings brought "under any other law *of this state*" – i.e., California law specifically.  See Ins. Code § 12414.26.  While defendant argues in a footnote that the McCarran-Ferguson Act acts to bar the federal FHA claim (since McCarran-Ferguson requires that no federal law invalidate any state law regulating the business of insurance), the court declines to dismiss the FHA claim without more substantive argument, and based solely on a passing reference raised for the first time in a reply brief footnote.  See Def. Reply at 3, n. 3.

Accordingly, and for the above reasons, defendant's motion to dismiss the claims

1 stated in plaintiffs' FEHA and UCL counts is GRANTED.  Furthermore, because the court's
2 grant of dismissal is premised on the purely legal grounds set forth above, and there are no
3 additional allegations that would suffice to cure the fundamental deficiency noted above,
4 the dismissal of both claims is with prejudice.

       3.      Substantive Claims for Relief

As an alternative ground for dismissal, defendant also argues that plaintiffs' FHA, FEHA, and UCL claims fail to substantively state cognizable claims for relief.

       a.      FHA/FEHA claims

Plaintiffs have alleged that defendant has violated the anti-discrimination provisions of the FHA and FEHA by "charging minority homeowners with 'non-prime' refinancing disparately high amounts for lender's title insurance relative to what [d]efendant charged non-minority Caucasian title insurance purchasers." See SAC, ¶¶ 61, 63, 74 (alleging claims under § 3605 of the FHA, and §§ 12955(I) and 12955(d) of FEHA).  Defendant, however, targets plaintiffs' ability to secure relief pursuant to either claim, noting that: (1) the sale of title insurance is not a statutorily defined "transaction" that is regulated under either FHA or FEHA; and (2) with respect to FEHA specifically, plaintiffs' claim pursuant to § 12955(d) fails for the additional reason that the sale of title insurance is not a statutorily defined "housing accommodation" as contemplated by the predicate Unruh Act.  Plaintiffs, in response, assert that title insurers fall within the rubric of federal and state housing laws by virtue of the fact that refinancing is conditioned upon obtaining title insurance, and furthermore that defendant's discriminatory conduct affirmatively falls within the provisions of the Unruh Act.

As to the former issue, the parties concede that both the FHA and FEHA apply only to qualifying "real estate related transactions," and furthermore, that both statutes define "real estate related transactions" in nearly identical fashion.  The FHA, for example, defines real estate related transactions in part as:  "(1) [t]he making or purchasing of loans or providing other financial assistance – (A) for purchasing, constructing, improving, repairing,

12

or maintaining a dwelling; or (B) secured by residential real estate"; or "(2) [t]he selling, brokering, or appraising of residential real property. See 42 U.S.C. § 3605(b). By comparison, FEHA defines qualifying "real estate related transactions" in part as: "(1) [t]he making or purchasing of loans or providing other financial assistance that is for the purpose of purchasing, constructing, improving, repairing, or maintaining a dwelling, or that is secured by residential real estate;" or "(2) [t]he selling, brokering, or appraising of residential real property...". (FEHA). See Cal. Gov't Code § 12927(h). It further appears undisputed by the parties that, as a title insurer, defendant is not engaged in the practice of making or purchasing loans. Thus, the primary issue raised by defendant's argument is whether the sale of title insurance qualifies as "other financial assistance," such that defendant's conduct is proscribed by the FHA's and FEHA's reach.

There are no California cases that directly speak to this issue, nor is there Ninth Circuit authority that does so. The parties rely primarily on competing out of circuit federal authorities in unrelated insurance contexts to advance their differing positions. Defendant, for its part, principally relies upon a Seventh Circuit opinion that soundly rejected the notion that the provision of casualty and property insurance qualifies as "other financial assistance" under the FHA. See NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 297 (7th Cir. 1992). As plaintiffs ask the court to do here, the plaintiffs in NAACP asked the Seventh Circuit to construe section 3605 of the FHA to cover defendant insurers. In refusing to do so, the court reasoned that "it would strain language past the breaking point to find that property or casualty insurance providers offer financial assistance for the purpose of purchasing a dwelling, in the same way that a lender offers such assistance." Id. As defendant points out, other district courts have similarly found that the provision of homeowners insurance is a form of "financial protection, not financial assistance," and thus not a "real estate related transaction" under the FHA. See, e.g., Home Quest Mortgage LLC v. Am. Family Mut. Ins. Co., 340 F. Supp. 2d 1177 (N.D. Kan. 2004); Doukas v. Metro. Life Ins. Co., 882 F. Supp. 1197, 1201-02 (D.N.H. 1995).

Plaintiffs, for their part, contrast these cases with other district court decisions that have found exactly the opposite, and concluded that homeowners may properly state claims against providers of property and liability coverage under the FHA. See, e.g.,Ojo v. Farmers Group Inc., 565 F. 3d 1175, 1178 (9th Cir. 2009)(homeowner's insurance); Nevels v. Western World Ins. Co., 359 F. Supp. 2d 1110 (W.D. Wash. 2004)(liability insurance); Nat'l Fair Housing Alliance v. Prudential Ins. Co., 208 F. Supp. 2d 46 (D.D.C. 2002)(homeowner's insurance). These courts largely reasoned that, because liability or homeowner's insurance is typically *required* in order to qualify for home purchases and similar benefits, the FHA should be construed to cover the provision of these types of insurance. See, e.g., Nevels, 359 F. Supp. 2d at 1121 ("the non-renewal of property insurance is actionable under § 3605 because it is financial assistance necessary to maintain a dwelling").[2]

Ultimately – and in view of the scant authority that exists and the conflicting results reached in the authority that *does* exist – the court is persuaded more by defendant's interpretation of the law, than by plaintiffs'. Namely, the court agrees with defendant that there is a meaningful distinction between homeowner's or other liability/property insurance, and title insurance. Homeowner's or other liability or property insurance provides a direct benefit to the homeowner or property owner in the event of loss, and is paid for directly by the owner, to the insurance company itself. As such, the argument that the mandatory provision of insurance to an owner in these circumstances constitutes "financial assistance" for the purposes of securing or maintaining a dwelling, makes a certain amount of sense. The same logic does not necessarily apply to title insurance, however. This is because, as defendant points out, title insurance "has unique attributes not shared by other types of insurance." See, e.g., Radian Guaranty, Inc. v. Garamendi, 127 Cal. App. 4th 1280, 1289

---

[2] Notably, the FHA provision being construed in Ojo, the Ninth Circuit case relied on by plaintiffs, was 42 U.S.C. § 3604, not § 3605 as alleged here. Thus, the Ojo court did not have occasion to pass directly upon the circumstances under which homeowner's or other insurance qualifies as a "real estate related transaction."

14

(2005). Title insurance means insuring, guaranteeing or indemnifying owners of real or personal property or the holders of liens or encumbrances thereon against loss or damage suffered by reason of defects in the title to said property, among other things. See Cal. Ins. Code § 12340.1. It therefore covers the indemnifiable loss to a *lender*, measured by the extent to which the insured debt is not repaid because the value of the property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance. As such, title insurance is distinct from other types of insurance, in that it does not operate to provide direct protection solely to the homeowner. Rather, and as plaintiffs directly allege is the case here, title insurance protects the lender, and payments are made to the insurer on the lender's behalf, instead of the homeowner's behalf. See SAC, ¶¶ 38-39. In other words, the benefits of title insurance paid flow to the lender.

In light of this distinction and plaintiffs' allegations, the court is not persuaded that title insurance sold to plaintiffs ultimately provides true "financial assistance" *to plaintiffs*, for the purpose of purchasing or maintaining a dwelling, as is required for title insurance to qualify as a "real estate related transaction" pursuant to the FHA or FEHA. Indeed, in these circumstances, the court is more persuaded by the Seventh Circuit's reasoning in NAACP, that to so find would "strain language past the breaking point."

The court is not unsympathetic to the policy considerations urged upon the court by plaintiffs' counsel at the hearing on this matter, and acknowledges that some of those considerations may counsel in favor of reading the FHA and FEHA more expansively to cover the provision of title insurance. However, if such policy decisions are to be made, they are to be made by the appropriate entities imbued with the proper rule-making authority, and not by this court in the absence of controlling authority clearly indicating.

Defendant's motion to dismiss plaintiffs' FHA and FEHA claims for failure to state a claim upon which relief can be granted is therefore GRANTED, on grounds that plaintiffs' claims fail to plead the requisite "real estate related transaction" under either statute. Having so ruled, the court need not, and does not, consider the parties' remaining

arguments as to whether the sale of title insurance is a statutorily defined "housing accommodation" as contemplated by the predicate Unruh Act.

The dismissal of plaintiffs' FHA and FEHA claims is with prejudice, in view of the legal nature of the deficiencies noted above, and the futility of any attempt to overcome the above-noted deficiencies with additional allegations. With respect to the FEHA claim specifically, the court also notes that the above-noted deficiencies provide an alternative ground for dismissal with prejudice, in addition to those already noted in conjunction with defendant's arguments pursuant to Insurance Code § 12414.26.

        b.    UCL claim

Defendant also contends that plaintiffs cannot state a cognizable claim for relief under the UCL. Plaintiffs' UCL claim alleges defendant's participation in "unlawful" business acts. See SAC, ¶¶ 79-84. Defendant argues that the claim fails because plaintiffs fail to allege any violation of Insurance Code § 679.71, the predicate statute upon which plaintiffs' UCL claim depends.[3]

Insurance Code § 679.71 states: "No admitted insurer that is licensed to issue any policy of insurance covered by this chapter shall fail or refuse to accept an application for, or to issue a policy to an applicant for, that insurance..., or cancel that insurance, under conditions less favorable to the insured than in other comparable cases...". The provision applies to insurance for (a) loss of or damage to real property; (b) loss of or damage to personal property; and (c) legal liability of "a natural person or persons for loss of, damage to, or injury to persons or property." Cal. Ins. Code § 679.70. California courts have furthermore construed the provision to apply to "particular kinds of insurance policies such as automobile liability policies and property loss policies." See State Farm Mut. Auto. Ins. Co. v. Haight, 205 Cal. App. 3d 223, 237-38 (1998).

The court is unpersuaded that § 679.71 covers defendant title insurer in this case.

---

[3] Plaintiffs also premise the UCL claim upon defendant's violations of the FHA and FEHA. However, because those claims fail for the reasons already set forth, the UCL claim also fails, to the extent based upon them.

16

Plaintiffs have not, in the first instance, cited any controlling legal authority that would support the claim that title insurers are subject to the foregoing anti-discrimination provision. Moreover, the language does not, on its face, support such a claim. As noted, the statutory provision applies to insurance for loss of or damage "to real property" and/or "to personal property." However, plaintiffs have failed to demonstrate that title insurance provides protection for loss of or damage "to" real property that would in turn trigger coverage under the provision. While plaintiffs contend that the Insurance Code definition for title insurance satisfies § 679.71, that definition states only that title insurance is defined as insurance "against loss or damage" suffered by an owner of real or personal property "by reason of" liens or encumbrances on, or defects in the title to said property, the invalidity or unenforceability of any liens or encumbrances thereon, or the incorrectness of searches relating to the title to real or personal property. See Ins. Code § 104. In other words, it says nothing about title insurance providing protection for loss of or damage "*to*" real property; rather, it protects against a more generalized "loss or damage" only, which loss or damage is in turn defined with reference to title defects specifically.

Given that plaintiffs have submitted no more than the foregoing in support of their argument that § 679.71 should be read to cover title insurers, and in view of the legal authority suggesting that the provision has traditionally been extended to liability and property insurers, the court concludes that plaintiffs have failed to allege actionable conduct on the part of defendant title insurer pursuant to § 679.71.

Since no other viable predicate statute remains upon which to base plaintiffs' UCL claims, the court accordingly GRANTS defendant's motion to dismiss plaintiffs' UCL claim, as stated in the third count of the second amended complaint. As noted in the preceding section in connection with plaintiffs' FEHA claim specifically, the court similarly notes that the foregoing deficiencies in connection with plaintiffs' UCL claim provide an alternative ground for dismissal of the claim with prejudice, in addition to those already noted in conjunction with defendant's arguments pursuant to Insurance Code § 12414.26.

C.   Conclusion

For the foregoing reasons, the court hereby GRANTS defendant's motion to dismiss, on the specific grounds referenced herein. Because the motion is granted on grounds that Ins. Code § 12414.26 bars the UCL and FEHA claims, as well as on grounds that all three claims fail to state cognizable claims for relief as a matter of law, there are no additional allegations sufficient to cure the above-noted deficiencies, and the dismissal of all claims is with prejudice.

To the extent the parties have filed simultaneous requests seeking judicial notice of certain documents in connection with the present motion, the court furthermore GRANTS these requests.

**IT IS SO ORDERED.**

Dated: December 22, 2009

PHYLLIS J. HAMILTON
United States District Judge